thank you your honor and may it please the court happy to have hair in any color and join the club this this hotly contested trial lost its way when the district court allowed two government witnesses to call the defendant uncooperative defensive fraudulent and suspicious in violation of the constitutional rights it lost its way when the court admitted an incendiary recording that added nothing probative and it lost its way when it when the district court admitted an order about a gun that defies explanation the government kept choosing the road most prejudicial resulting in errors that aren't harmless under any standard let alone the beyond a reasonable doubt standard that governs the constitutional errors to start with the first constitutional error for over 40 years applying Prescott this court has not allowed the assertion of fourth amendment rights to be evidence of guilt because doing so places an unfair burden on the exercise of those rights Prescott requires reversal here based on two facts that are undisputed first that the government drew from its witness that the defendant was uncooperative with law enforcement suspicious displayed indications of fraud the exact burden on the fourth amendment that was prohibited by Prescott and it did so based only on her exercising her right not to allow the FBI to take fingerprints in her home without a warrant counsel with respect correct me if i'm wrong this assertion of a right occurred before she was even charged do you have any case law that suggests that asserting a constitutional right if there is such a thing before you're charged is a violation of Prescott Prescott itself asserted her right or actually didn't literally assert it but exercised it prior to being charged she exercised it right when the i think there were postal inspectors in that case knocked on her door no one had been charged that was her first introduction at all to federal criminal law enforcement one has a fourth amendment right to be secure in one's home regardless of whether one's charged or not but counsel you don't have a situation where a potential suspect is denying the police to do a warrantless search the FBI is there investigating a possible burglary who knows what she's talking to an insurance adjuster she says this isn't a good time another time it's the housekeeper is there you know she's not asserting her constitutional right she's just saying this isn't a good time to do that and the insurance adjuster is saying look to me like she wasn't you know fully cooperating with the FBI how is that an assertion of a constitutional right that you know that's what permeates all the your arguments in this case judge Seaborg is an excellent trial judge and he's dealing with a very difficult situation where your client is both trying to avoid discipline at work for having this totally inappropriate relationship with a prisoner and pursuing a burglary claim where she's not telling the truth the whole truth and nothing but the truth to anyone because of perhaps the same concerns about discipline uh for her inappropriate relationship and whenever something comes up you either put it over here and say it's constitutional violation or you put it over here and say well she was only doing that because of the underlying sheriff's investigation this this is a constitutional violation Prescott didn't expressly assert any rights either what she did was just not open the door um and so what is really going on here is and and the explicit testimony of the government's witness was not just that she uh said she was busy but that she was uncooperative defensive suspicious um an indicator of fraud all of that suggests that everybody knew that this was a big deal that she was not cooperating with the FBI and the ultimate risk that Prescott focuses on is that uh conduct where you're not allowing the government to do what it wants to do that you're constitution to do becomes evidence against you and that is exactly what happened here she did not allow the search there's no question she didn't the FBI asked her to take fingerprints and left without taking fingerprints and the result of that the result of her exercise of her important fourth amendment rights was that she was declared in effect a guilty person which is exactly what with respect i following up on judge lasnik comment i i'm really struggling on this part of it that somehow she was asserting a constitutional right but let's let's say she was here uh rosen didn't testify to the search or the refusal uh in addition to that um even if rosen hadn't testified that myers refused consent to assert his testimony would have been admitted for a proper purpose because she'd asked them to the FBI to take fingerprints uh because she herself reported to be the victim of a crime i i just like judge lasnik i i i'm having difficulty squaring with what you're asserting here with a constitutional right there are some cases of course that are really really clear where there is a constitutional right and uh the authorities are referring to that but this is this is really doesn't fit that does it i i think it does your honor and let me take there were two different pieces of your question and hopefully i can address them both first of all it does burden the constitutional right because it went directly to what prescott prohibits that is the the inference of guilt resulting from the conduct if if the court allows the government to just declare someone uncooperative and that's okay because they didn't specifically mention fingerprints or whatever then that's what the government can do in every case get around prescott they can just skip the mention of the specific uh issue and go directly to the conclusion that the defendant was uncooperative suspicious and all these other terrible terms that apply no trial judge would allow that in in most cases it wouldn't you would never allow it to happen but in this case where she is accused of hiding uh information on the insurance claim it changes the complexion completely well let me let me get to that because i think that was also the other part of judge smith's question and i don't think it is at all correct to use that justification i i respect that the the facts that the court has noted but that doesn't solve this fourth amendment problem it doesn't for a couple of reasons first that's not how the government used this evidence they did not use this evidence for a proper purpose they used it to prove that she was defensive uncooperative and an indicator of fraud merely because she refused to let the fbi uh take fingerprints in her home that's the fourth amendment violation the notion that that this would be okay as uh well since she was asserting a burglary uh she should have consented to a search um that is actually prohibited by for a guilt but even apart from that the the repurposing from what they used it for at trial um say they're contradicting her her defense isn't right because the way they're contradicting her defense is not based on okay in the case they cite the levitt case where the defendant said hey i was cooperative she never said anything like that this isn't a direct refutation of her defense this is an attempt to refuse her defense with the prohibited inference that had she been an innocent victim of a burglary she would have consented to fingerprinting and that's exactly what the fourth amendment and prescott say the government is not allowed to do so counsel if i constitutional error you're not asserting a rule 403 problem i think there would be a rule 403 problem with this evidence but you are correct your honor our argument about this testimony is that it's a violation of prescott and the fourth amendment um i i do want to make sure i get to uh you got a minute yes 15 seconds before we hear from you eaten the sentencing argument i did just want to say about the incendiary recording um we did make the proper objection the judge acknowledged that in denying our post-trial motion um and i urge you to look at uh uh this is the jail call yes wow correct i urge you to look at judge uh sergeant ambat's testimony that shows that the government's incendiary recording was completely unnecessary ambat gave them at er 13 57 to 58 all of the facts that they ever needed or wanted the incendiary recording was just completely prejudicial and now i've run into mr noler's time so let me stop and let him talk very well okay so you'll have four minutes when we get back to you so mr no you get a new clock for three minutes let's let's make certain our there we go makes it not important has that for you very well okay please proceed mr noler thank you very much your honor uh matthew noler for miss april miras miss miras was the victim of a burglary in which she suffered more than 57 000 in legitimate losses covered by her insurance policy yet because her insurance claim also included roughly 9 500 of unrecoverable losses the district court sentenced her as though she had fabricated the entire 67 000 claim that decision was wrong as a matter of law and it effectively doubled miss miras's sentence which is why the government doesn't even try to argue that the error was harmless let's assume argue in them that some of the insurance claim was fraudulent what amount of loss did the district court find that mires was intended intended to cause the district court found that miss miras intended to cause 67 000 and lost the no one disputes that miss miras was entitled to receive in the absence of any fraud and that's the problem is that this court has held in the hicks decision and the burger decision that a district court may enhance a defendant's sentence based only on losses that quote resulted from the defendant's fraud that requires a but for causal connection between the fraud and the loss and so as the first third fourth and fifth circuits have all held a district court's actual or intended loss can't include any payments that the defendant would have been entitled to receive in the absence of fraud and here at sentencing and again before this court the government hasn't denied that in the absence of fraud miss miras would have been entitled to receive at least 57 400 for the losses that she legitimately suffered but that's in the absence of fraud there was fraud here even if she was the victim of a burglary she did not cooperate as required in the insurance policy with the investigation of the burglary and committed fraud in that way didn't she so in some respects uh we're assuming that to be true for the purposes of the sentencing argument but what in the absence of fraud means your honor is in order for there to be a but for causal connection between the fraud and the loss you have to ask what what would have happened if there hadn't been any fraud and then you have to compare that to um what happened in the world with fraud and it's the difference between what would have happened in those two scenarios that sets the upper limit of loss and so what you have to look at is what would miss miras have been entitled to receive if she hadn't committed any fraud at all and nobody denies at this point in the case that in that situation she would have been entitled to receive at least 57 400 that amount can't be included in intended loss the district court erred by including it and in so doing effectively doubled miss miras's sentence okay your time is up let me ask my colleagues whether either has questions of mr noler i'm fine thank you i'm good very well we'll hear from mr shepherd again on uh remand i mean excuse me and let's hear now from the united states uh mr mason thank you your honor and may it please the court my name is ross maser and i represent the united states of america the evidence presented here over a week-long trial showed that the defendant was a law enforcement officer who filed a fraudulent insurance claim for items that included her service weapon and other sheriff's department issued equipment the evidence of fraud was overwhelming and its sufficiency is not challenged on appeal all of the disputed evidentiary questions were thoroughly briefed argued and correctly decided below and the district court did not clearly err when it found that the the amount of intended loss was the face value of the insurance claim i counsel what without specific factual findings from the district court how can we determine that myers purportedly or purposefully sought to cause losses equivalent to the total amount of her insurance plan so i think the district court's calculation was correct for for two reasons your honor the first um i would refer to the court to the to the decision we we discussed in our brief united states vitorlai where this court found no need even to reach an almost identical claim um that the district court's loss calculation included both legitimate and illegitimate losses that was because twirly failed to comply with the claims procedure for showing that the loss he suffered was even caused by a covered event but the same isn't it clear though that the district court has to determine what she intended to cause yes the district court has to determine uh what what my recent the amount of loss she intended to cause and where in the record did he do that well the the district uh the district court heard extensive argument on this um and reviewed the party's extensive briefing and it concluded you know at the sentencing hearing that the omissions and the lies associated with her claim um were included in in the fraud um okay but but again i understand that but my understanding unless you can show me that i'm mistaken is that the law requires the judge to specifically find what her intent was what she intended the amount of the fraud to be basically and i i don't see that on the record the fine judge but i think in this case perhaps she needed to do a little bit more in terms of a specific factual findings what where am i where am i wrong well i think that the defense argument here um about about uh the amount that myra's purposely sought to inflict um misapplies a distinction and i would refer the court to the key case that the defense that the defense relies on in the sentencing context which is usv manito the 10th circuit decision authored by then judge forsage um but my risk takes the distinction in that case between knowledge and purpose out of context in there the defendant was caught after stealing and cashing two convenience checks for eighteen hundred dollars but the district court found an amount of loss of ten thousand dollars uh which was the credit limit and the amount that theoretically the defendant could have written in on the checks and what the 10th circuit said was that um even though that amount might have been theoretically possible there was just no evidence of that the defendant intended to cause that much loss the the situation would be analogous um here if the government had argued that the the limit on myra's insurance policy you know one million dollars or whatever it may have been was the amount of the loss but not the amount of the claim she actually submitted so i think that the distinction that the defense uh draws between purpose and knowledge doesn't apply on facts of this case and moreover as in tourley um this court found no need even to reach whether particular to reach the issue of whether particular items were legitimate or illegitimate it simply said that because uh the defendant failed to comply at the outset with the claims procedure for showing that the loss uh she suffered was caused by a covered event that the court didn't need to look any further and that that reasoning applies here as well my risk failed to answer basic questions about how the loss occurred did she suspect anyone when was the last time someone had been at her house who was she living with and by not answering those questions she didn't even let the insurance company determine whether this kind of loss was caused by was caused by a covered event and so as in forlay the court need look need look no further um and and in that regard i think the district court uh the district court's findings um were not were not necessary so your your position is the district judge made all the findings he needed to and on an appropriate basis absolutely your honor and then alternatively uh even if the court were to consider miras's argument that some of the losses were legitimate and some were illegitimate uh which the government doesn't believe is accurate but even if the court were to consider that argument in this court's decision in popo which we cite on page 57 of our brief the court held that the amount billed to the insurer may constitute prima facie evidence of intended loss for sentencing purposes and in alfas um which the defense strongly relies on uh the first circuit held that in a case like this one where it's almost impossible to separate what might be fraudulent from what might not be fraudulent where the claim is rife with fraud then a sentencing court may use the face value of the insurance claim as the starting point for computing loss what what is your response to mr noler's point that you can include payments that the defendant was entitled to uh into receiving the absence of fraud in the calculation of the intended law my response is that that that test doesn't apply here because it was miras's fraud itself that prevents us from knowing what she would have been entitled to in the absence of fraud her fraud hid every aspect of what happened of the of the events surrounding the burglary and so there's no way to engage in that that counterfactual about what she might have been entitled to however uh to the extent that we can ask that question um i believe that the defense position is that fowler committed a burglary on his own but fowler was living with miras at least until the day before the burglary occurred and miras's insurance policy specifically disclaimed any coverage um for a loss that was caused by someone who regularly resided at the insured location and so for for that reason um even where the where the court to consider some portion of the claim as legitimate miras would not have been entitled to any insurance coverage well that that may be but we're talking here about the amount of the loss for purposes of our sentencing so it seems like your position is if the amount of the insurance policy we'll just round it up to say seventy thousand dollars let's say that legitimacy or legitimately she would have been entitled to get back sixty thousand because she actually lost sixty thousand dollars that was covered by the policy is it the government's argument that in that situation the amount of the loss would be $70,000 in in ordinarily no or didn't you know that i think that i agree with your honor that the general rule is that when um when it is possible to segregate the legitimate and illegitimate portions of the loss the loss amount is only the the illegitimate portions the fraudulent portions but in in this case um the entire claim was fraudulent it wasn't only there's just no there's no way to separate the legitimate from the illegitimate items so your so your argument here is that my hypothetical is kind of irrelevant because in this case there was no legitimate recovery on her part under any circumstances the entire claim was fraudulent because she would not have been entitled to one red cent from the insurance company is that correct well i would never call your honor's hypothetical irrelevant but yes i agree that that is the government's position your honor um i'd like to respond just very briefly to some of the evidentiary claims that my my colleague discussed um my words uh myrus's prescott claim fails for three reasons the first is that she never asserted her fourth amendment rights so as to trigger any protection under prescott when the agents asked to take fingerprints she didn't say no she said not now and when they came back the next day she had more reasons why it was still a bad time and the reason and she she did that deliberately so as to preserve the appearance of cooperation this court should not hear her to claim the protection of a right that she never invoked but secondly um the prescott claim fails for the reason the district court found below uh which is that the government just never mentioned a search request let alone commented on a refusal to consent to one and i think that the testimony here is is important um in in prescott the court held that it was wrong for the government to argue that prescott's refusal to allow warrantless entry entry into her residence was proof of guilt in this case an insurance adjuster was asked whether he remembered any statements that myrus made to the to the fbi agents during the brief part of the conversation that he overheard and and what he testified was that they they had asked her to do something he said i can't remember what it was but she basically said she didn't have time and she had to work with me and that's on page 963 of the record um in this case the the the uh wasn't sanitized the insurance adjuster didn't mention a search request simply because he didn't remember one and so the case doesn't implicate any of the thorny or constitutional questions that potentially may have arisen if a different witness had been in a position to um to talk about a specific search request what distinguishes this case as as uh judge smith um alluded to from from the prescott case and from most other cases is that law enforcement was not investigating myrus of a crime it was investigating a crime that myrus had reported um however if this court were inclined to rule more broadly which the government would would have invited to consider it could hold that even if the insurance adjuster had testified specifically that that testimony would have been admissible under the exception to the prescott rule which this court recognized in levitt via rave and which other courts have also recognized because uh in levitt that in levitt the testimony was admissible because it directly refuted the claim at trial that the defendant had been cooperative here the testimony would have been admissible because it directly refuted the claims that myers was the victim of a burglary and that she did not know uh who the perpetrator was until almost a year later um other than that i would i would only assert that the the uh while the district court's errors excuse me rulings were all correct any error would have been harmless beyond a reasonable doubt given the overwhelming evidence of fraud unless the panel has any questions the government would respectfully ask that you affirm the conviction and sentence very well any questions by my colleagues we're going fine thank you good too thank you very well thank you mr razor okay so mr shepherd you've got four minutes thank you for indulging us your honor and if i could ask for one more bit of indulgence um since so many of the court's questions were about the sentencing issue i'd like to just briefly address the evidentiary issues and cede the remainder of my time would that be possible talk about whatever you want including indulgence that might be enough no i just meant i i'd like to cede the remainder of my time after i briefly address these issues to mr noller to let's find you got you got the time you can divide it up as you wish appreciate it your honor first of all let me just briefly touch on the claim that the evidence was overwhelming the government keeps saying that but uh we responded in our briefs and showed why we had a credible answer to every piece of evidence they offered plus we had several instances of showing that the jury would mistrust the government's proof because it blew up in their face on a number of occasions they never respond to any of that they just keep saying the proof was overwhelming if it was they would have had a response to our her fourth amendment right either in fact she testified that she wasn't objecting and not letting the officers in based on the fourth amendment but she got her fourth amendment protections anyway because that's what the fourth amendment is all about it doesn't matter who's being investigated prescott wasn't being investigated herself either it doesn't matter who's being investigated one has those rights to protect their own home um and and the fact that the search request was not mentioned if the government can just skip that prescott becomes a dead letter and look look at these facts and what rosen testified not just that she gave an excuse but that she was agitated defensive that she was an indicator of fraud that she was uncooperative the jury wasn't going to think that that was the fbi asking for help on a weather forecast they knew that that was something really important and that's where the constitutional rights get triggered and this is not a case like levitt because this was not a direct refutation of a claim of cooperation this was an argument based on the prohibited inference that if she were innocent she would have allowed the search and i'll yield the remainder of my time to mr noler thanks for the court's indulgence thank you mr no i want to ask you a question right off the your opposing counsel says that since the entire claim was fraudulent that your analogy doesn't work what's your response to that so they keep saying entire claim was fraudulent and i think it's important to break out what they mean by that because the government did not argue to the district court and has not submitted any evidence that ms myris did not suffer a large number of compensable losses under the insurance policy so when they say entire claim is fraudulent what they mean is that in their view miss myris uh didn't provide the full truth to the insurance investigators and lied about some facts now we disagree with their account of the facts but the bottom line is that the government does not contend that if she had told the truth about everything they say she lied about she would have been entitled to a payment from farmers insurance of roughly 57 000 and so this isn't a farmer's insurance point to anything in the policy that says hey her claim is totally fraudulent did they or did they say we we all heard 57 000 no they didn't find that but they haven't said the opposite and if i could address your point about the factual findings the district court didn't make any factual findings beyond a finding that miss myris committed some amount of fraud it didn't find which lies it was relying on it didn't find anything with respect to miss intent to cause 67 000 in loss with respect to any of those lies and it didn't find that in the absence of those lies miss myris would have been entitled to nothing uh the government now cites this regularly residing language in the policy it never cited that to the district court that argument has been waived and at a minimum that would require a remand to analyze the meaning of that language as applied to these facts okay your time is up let me ask my colleagues whether either has additional questions for mr knoller or mr shepherd for that matter any questions i'm i'm fine thank you i would just like to ask about the guideline range uh you talk about it subjected her to double the punishment but uh the range of level uh with 12 to 18 months what you were asking for would be four to ten months isn't that true that's correct your honor and the reason the judge could choose 10 months versus 14 months and we'd be arguing about basically four months that's that's possible your honor the reason and that's a question for remand the reason i say double is that i think the district court made pretty clear he thought a mid-range sentence was appropriate a mid-range sentence in the four to ten ranges seven months which is half of the 14 months that my 32 years on the bench you know we say things about a mid-range when the range is here that we might not say mid-range if the range was there but i it doesn't go to the basis of your legal arguments but i was just pointing out that it might be the difference between a top of a range of 10 months and the bottom of the range of 12 months but thanks counsel thank you well thanks to all counsel in this case the case of u.s versus myers is submitted
judges: Wallace, M. Smith, Lasnik